IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Lauren Albright, individually and as a personal representative of NG, a minor, <br><br>  Plaintiff, <br> v. <br><br> Berkeley County Sheriff's Office, Berkeley County School District, Anthony Dixon in his individual and official capacity as Superintendent of Berkeley County School District, Duane Lewis, Jeffrey Day, and William Kimbro,, <br><br>  Defendants. | Case No. 2:24-3260-RMG <br><br><br> **ORDER** |

This matter is before the Court on the Report and Recommendation (R & R) of the Magistrate Judge, recommending that Defendants' motions for summary judgment be granted. (Dkt. No. 60). For the following reasons, the Court adopts the R & R as the Order of the Court and grants the motions for summary judgment. (Dkt. Nos. 53, 54).

**I.  Background**

Plaintiff alleges that NG, an eight-year old student at Whitesville Elementary School, was detained by Defendant Day, a Sheriff's Deputy employed by the Berkeley County Sheriff's Office (BCSO) who was acting as a substitute School Resource Officer. BCSO had a contract with the Berkeley County School District (BCSD) to provide School Resource Officers (SRO) to the District. Under the contract, if an assigned SRO is absent, a substitute SRO or law enforcement officer can be assigned in their place. (Dkt. No. 53-3).

1

On November 16, 2023, NG in a moment of apparent frustration told his teacher he wanted to run away and was allegedly told in response, "go ahead and run away." (Dkt. No. 55-1). NG climbed behind an unstable statue in the school's entry area and began pushing the statue, concerning the school staff that it may fall and injure him. (Dkt. No. 53-7). Defendant Day was notified by a staff member that his assistance was needed. Defendant Day removed NG from the area, took him to the principal's office, and detained him there for some time with other staff members present. Plaintiff alleges that Day aggressively detained NG and caused bruising to his body, physical pain, and mental trauma.

Four of Plaintiff's claims survived dismissal (Dkt. No. 25): (1) Excessive force claims under the Fourth Amendment against Day in his individual capacity, (2) supervisory liability claims against Defendants Kimbro and Lewis in their individual capacities, (3) a *Monell* claim against Dixon in his official capacity, and (4) gross negligence claims against BCSO and BCSD.

The Magistrate Judge issued a R & R recommending this Court grant Defendants' motions for summary judgment. Plaintiff objected (Dkt. No. 61) and Defendants replied (Dkt. Nos. 62, 63).

## II. Legal Standard

### A. Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a de novo determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). In the absence of specific objections, the Court reviews the Report for clear error. *See*

2

*Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

### B. Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under applicable law. See id. Therefore, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving part must demonstrate specific, material facts exist that give rise to a genuine issue to survive the motion for summary judgment. See id. at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

## III. Discussion

After a *de novo* review the Court finds that the Magistrate Judge ably addressed the issues and correctly concluded that Defendants are entitled to summary judgment. (Dkt. No. 60).

### A. Fourth Amendment

When faced with an excessive force claim, the Court applies an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). When applying the objective reasonableness standard, the question is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citing *Graham*, 490 U.S. at 396-97). The court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," and "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. It is also appropriate to consider the suspect's age and the school context. *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018)

The Magistrate judge analyzed Plaintiff's excessive force claims using the *Graham* factors and properly found that, when viewing the facts in the light most favorable to Plaintiff, Day's actions were objectively reasonable. (Dkt. No. 60 at 20). Plaintiff asserts that Day used excessive force twice that day: (1) when he removed NG from the hallway and (2) when he restrained NG in the principal's office.

To the hallway encounter, the evidence—including the surveillance video footage documenting the removal from the hallway—supports a finding that Day acted in an objectively

reasonable manner. Day pulled NG by his arm, with no reported injuries, and walked him to the principal's office while NG repeatedly tried to flee.

In regard to the encounter in the principal's office, the evidence—including Day's body camera footage—supports a finding that Defendant Day acted in an objectively reasonable manner. Day, along with the school psychologist and assistant principal who were present in the principal's office, offered undisputed evidence that NG repeatedly tried to escape from the room and attempted to strike others. Defendant Day used a variety of "control holds" to restrain NG but did not handcuff him and released him at several points to give him an opportunity to calm down, at which point NG resumed creating a disturbance. The evidence, including the body camera footage and statements of those present, supports a finding that Day acted in an objectively reasonable manner.

The Magistrate Judge correctly found that Plaintiff's Fourth Amendment claims should be dismissed. Further, because Plaintiff has failed to prove an underlying constitutional violation against Day, her failure to train claim against Lewis and Kimbro fails as well. *See Evans v. Perry*, 578 F. App'x 229, 233 (4th Cir. 2014).

**B. Monell**

A municipality cannot be held liable under 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Local governments can be sued under 42 U.S.C. § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690. *Monell* claims can arise (1) through an express policy; (2) through the decisions of final policymakers; (3) through an omission, such as failure to properly train officers, that manifests deliberate indifferent to the rights

5

of citizens; or (4) through persistent and widespread practices equating to the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). A school board can be held liable under § 1983 when execution of its policy or custom inflicts constitutional injury. *Sciacca v. Durham County Board of Ed.*, 509 F. Supp. 3d 505, 517 (M.D.N.C. 2020); *Mosely-Jenkins v. Orangeburg Cty. Consol. Sch. Dist. 4*, C/A No.: 5:19-cv-00701-JMC, 2020 WL 1443262, at *3 (D.S.C. Mar. 25, 2020).

To prevail under a *Monell* claim, a plaintiff must point to a "persistent and widespread practice…of municipal officials," the "duration and frequency" of which indicate that policymakers (1) had constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1386-91 (4th Cir. 1987)). Knowledge and indifference can be inferred from the extent of employees' misconduct. *Id*. at 1391. Sporadic or isolated violations of rights will not give rise to *Monell* liability; only "widespread or flagrant" violations will. *Id*. "Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is by definition easier." *Owens*, 767 F. 3d at 403 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiff has conceded claims asserted against Dixon in his individual capacity. (Dkt. No. 56 at 2-3). With the remaining claim against Dixon in his official capacity, the Magistrate Judge correctly concluded that the claim is essentially against the school district. (Dkt. No. 60 at 21). A claim against a public official in his official capacity is "essentially a claim against" the governmental entity that the official represents. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Plaintiff's *Monell* claims fail for multiple reasons. First, Plaintiff has not identified any policy or custom that caused NG's constitutional rights to be violated. Plaintiff asserts that "there

6

is an explicit policy of allowing untrained officers to serve as SROs so long as they intend to get training in the future." (Dkt. No. 56 at 3). Beyond an unconstitutional practice or custom, an entity may also be liable under Monell for its inaction, where its omissions constitute deliberate indifference to constitutional injuries. For instance, the failure to train, supervise, or discipline officers can support liability under Monell. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011)

However, "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* For an entity's failure to train its employees to rise to a constitutional violation, the failure "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* In *City of Canton*, the Supreme Court required that "only where a failure to train reflects a deliberate or conscious choice by a municipality ... can a city be liable for such a failure under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). The Court reasoned that "the focus must be on adequacy of the training program in relation to the tasks that the particular officers must perform." *Id*. The Court stated, "that a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id*. at 390-91.

Here, Plaintiff has not sufficiently shown that BCSD's alleged failure to train amounted to a deliberate or conscious choice. Plaintiff has only put forward a single instance—the present circumstances—of BCSD allowing a substitute SRO who has not received specific training to work in the school. Sporadic or isolated violations of rights will not give rise to *Monell* liability; only "widespread or flagrant" violations will. *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014).

7

The Magistrate Judge correctly found that Plaintiff has not sufficiently met the demanding standards for *Monell* liability, and the claim should be dismissed.

C. **Negligence**

The South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, et seq. ("SCTCA"), is "the exclusive remedy for any tort committed by an employee of a governmental entity." S.C. Code Ann. § 15-78-70(a). Under the Act, a governmental entity may be liable for a loss resulting from a "responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student" when the responsibility or duty "is exercised in a grossly negligent manner." S.C. Code Ann. § 15-78-60(25). "To state a claim for negligence, the Plaintiff must show: (1) a duty of care owed by the Defendants to the Plaintiff; (2) a breach of that duty by negligent act or omission; and (3) damage proximately resulting from the breach." *Tanner v. Florence Cnty. Treas.*, 521 S.E.2d 153, 158 (S.C. 1999). "Gross negligence" is the "intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Doe v. Greenville Cnty. Sch. Dist.*, 651 S.E.2d 305, 309 (S.C. 2007). It is the failure to exercise even "slight care." *Etheredge v. Richland Sch. Dist. One*, 534 S.E.2d 275, 277 (S.C. 2000) (citation omitted).

Here, the Magistrate Judge correctly found that in this case, Plaintiff has not shown any evidence that Defendants failed to exercise even "slight care." Plaintiff argues that a reasonable jury could conclude that the District was negligent because NG's teacher allowed him to "run away" knowing that he had done so in the past. (Dkt. No. 61 at 2). However, Plaintiff also asserts that NG had explicit permission from his teacher to go to this space once per day to calm down. (Dkt. No. 56 at 1-2). Further, the staff of the school quickly came to NG's aid, brought multiple

employees including the school psychologist to assist him, and brought him to a safe place where he could color and relax.

The Magistrate Judge correctly found that Plaintiff has not sufficiently stated a claim for gross negligence, and the claim should be dismissed.

**D. Conclusion**

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation of the Magistrate Judge (Dkt. No. 60) as the Order of the Court. Defendants' motions for summary judgment (Dkt. Nos. 53, 54) are **GRANTED**.

**AND IT IS SO ORDERED.**

                                              s/ Richard Mark Gergel
                                              Richard Mark Gergel
                                              United States District Judge

October 27, 2025
Charleston, South Carolina